**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

CHARLES BRUCE WHITE,                                                                PLAINTIFF
REG. #02068-084

v.                                        4:11-cv-00251-BRW-JTK

LYNN OLLAR, et al.                                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

### I.      Introduction

This matter is before the Court on the following Motions: 1) Defendant Byrd's Motion to Dismiss (Doc. No. 116), to which Plaintiff filed a Response (Doc. No. 123); 2) Plaintiff's Motion for Summary Judgment (Doc. No. 126), to which Defendants filed Responses (Doc. Nos. 137, 139, 144, 148); 3) Defendant Holladay's Motion for Summary Judgment (Doc. No. 141), to which Plaintiff filed a Response (Doc. No. 151); 4) Defendant Ollar's Motion for Summary Judgment (Doc. No. 144), to which Plaintiff filed a Response (Doc. No. 151); and 5) Defendant Byrd's Motion for Summary Judgment (Doc. No. 148), to which Plaintiff filed a Response (Doc. No. 151).

Plaintiff White is a federal inmate currently incarcerated at the Federal Correctional Institution in Pollock, Louisiana.  He filed this action pursuant to 42 U.S.C. § 1983 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), alleging violations of his constitutional rights while he was incarcerated in the Faulkner County (FCDF) and Pulaski County Detention Facilities (PCDF) (Jails) as a federal pretrial detainee from January, 2011,

through May, 2011.  Defendants are Pulaski County Sheriff Doc Holladay, Faulkner County Sheriff Karl Byrd, and United States Marshal Lynn Ollar.

According to the mostly undisputed facts as set forth by the parties in their Motions and Responses, Plaintiff White was detained at the PCDF pursuant to a contract with the United States Marshal Service (USMS) from January 6, 2011, until March 15, 2011, and from May 3, 2011, until May 19, 2011 (Doc. No. 142-1, p. 1).  During his first incarceration there, he claims he was housed with two state-sentenced prisoners, and that the conditions of his cell were unconstitutional, with mold on the wall, under the bed, and in the showers; raw sewage leaking from the ceiling; and infested with small flies.  On or about March 15, 2011, Plaintiff was transferred to the Van Buren County Detention Facility, and then to the FCDF on April 15, 2011.  While at FCDF, Plaintiff alleges he was denied bedding, hygiene, writing materials, telephone, access to the courts, and religion. He also was involved in a physical altercation with another inmate with AIDS.  He was transferred back to PCDF on May 4, 2011.   On May 6, 2011, he was placed in administrative segregation because he was designated an escape risk by the USM, and pursuant to Jail policy, was placed in handcuffs and leg shackles when out of his cell.  He complains about his cell conditions at the Jail during this time, that feces was on the door frame, the water would not work and the toilet would not flush, his legal mail sent from his attorney was returned, undeliverable, and he was subject to second hand smoke.  (Doc. No. 15.)

Defendant Ollar is employed with the USMS as the transport supervisor, and is responsible for scheduling prisoner transfers and movement.  She notified the PCDF on May 5, 2011, that Plaintiff was an escape risk, based on information obtained by another USM that Plaintiff was convicted in May, 1990 of escape from prison.  She also notified the Jail that Plaintiff had been

involved in a fight at the FCDF and that he needed a HIV test.  (Doc. No. 86, p. 4).

## II.    Motion to Dismiss

Defendant Byrd originally filed this Motion, based on Plaintiff's failure to sign a medical authorization form as ordered by the Court on May 1, 2012 (Doc. No. 103).  In Response, Plaintiff indicated that he sent copies of his medical records, together with a completed authorization form to Defendant on May 12, 2012 (Doc. No. 123).  Defendant did not file a Reply disputing this fact, and therefore, in light of the other Motions subsequently filed, the Court finds this Motion should be denied without prejudice as moot.

## II1.    Summary Judgment Motions

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit."  Id.

In addition, "all material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED.R.CIV.P. 56(e)(2).

### A.    Plaintiff's Motion (Doc. No. 126)

In his Motion, Plaintiff asks the Court to refer to the arguments he set forth in his Motion for Evidentiary Hearing and accompanying Brief (Doc. Nos. 120-121) as his arguments in favor of summary judgment relief. In the Brief, he claims that as a federal pretrial detainee, he was denied due process and equal protection by the Defendants (Doc. No. 121, p. 6). He claims Defendant Ollar disseminated fraudulent information to Pulaski County that he was a high escape risk and extremely dangerous, which resulted in Plaintiff's punitive treatment at the Jails and later at the Federal Correctional Facility in Memphis, Tennessee. (Id.) While at PCDF, he claims he suffered serious harm in the form of gashes to his Achilles tendon caused by the leg restraints, back pain caused by sleeping, sitting and standing on concrete for extensive periods of time, denial of needed medications and exposure to environmental tobacco smoke (ETS). (Id. at p. 7.) He also claims Defendants Ollar and Holladay possess direct knowledge of illegal tobacco sales at the PCDF, because the tobacco products sold contained Oklahoma stamps. (Id.) He claims both Byrd and Holladay withheld medications and medical treatment from him and subjected him to unconstitutional punishment in punitive isolation. (Id. at p. 9.) Finally, he states he was denied access to the law libraries at both Jails, and denied the use of pen, paper, envelopes, and telephone

communications with his attorney.  (Id. at p. 13.)  Based on these allegations, Plaintiff states he is entitled to summary judgment as a matter of law.

In their Responses, Defendants Byrd and Holladay state that Plaintiff's Motion should be dismissed for his failure to file a statement of material undisputed facts, as required by the Local Rules.[1]  They also state Plaintiff provides no proof of their personal involvement in the actions alleged, and Defendant Byrd claims entitlement to qualified immunity.  Finally, Defendant Ollar denies Plaintiff's allegations that she retaliated against him by releasing false information in May, 2011 (that he was a dangerous escape risk), because she did not learn of this lawsuit filed against her until June 20, 2011, and because Plaintiff was convicted of escape in 1990.  Defendant Ollar also claims entitlement to qualified immunity.

Given the dispute of material facts between the parties, and the failure of the Plaintiff to comply with the Local Rule, the Court finds that his Motion should be denied.

**B.     Defendant Ollar's Motion (Doc. No. 144)**

According to exhibits filed in support of her Motion, Plaintiff White was convicted of escape from prison in May, 1990, while serving a state sentence in Michigan for armed robbery and criminal sexual conduct.  (Doc. No. 146-1, pp. 2-8.)  He then was convicted of kidnaping, in violation of federal law, and sentenced to 121 months imprisonment.  (Doc. No. 146-3, p. 1.)  In May, 2009, the State of Michigan issued a warrant for his arrest for violation of parole, and in June, 2009, the United States District Court, Eastern District of Michigan, issued a warrant for violation

---

[1]Local Rule 56.1(a), of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, provides, "Any party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried."

of the conditions of his supervision.  (Doc. No. 146-3.)  That supervised release was revoked on February 4, 2010, and Plaintiff was sentenced to a term of imprisonment of 24 months. (Doc. No. 146-4.)  Meanwhile, he was indicted by the United States District Court, Eastern District of Arkansas, for the offense of felon in possession of a firearm, for which he was imprisoned on November 10, 2011 for a term of 84 months.  (Doc. No. 146-5.)

Defendant Ollar states in an affidavit that she does not transport prisoners from one detention facility to another, or to court hearings, and that she was on leave on May 3, 2011, the day Plaintiff was transferred to court for a hearing on his felon in possession charge.  (Doc. Nos. 146-9, 146-18.) At that hearing, the transporting officer, Deputy USM (DUSM) Reagan Stephens learned that Plaintiff had a previous conviction for escape, and informed the Chief Deputy USM (Rahbany) of this information. (Doc. No. 146-9, p. 3.) The next day, when Ollar returned to work, she was informed that the Chief Deputy decided to move White to a more secure facility based on the escape charge, and therefore, notified the PCDF of that fact, plus the need to have Plaintiff tested for HIV because of the fight he had with an AIDS inmate at the FCDF. (Id. at pp. 3-4.)  Based on that information, Pulaski County placed Plaintiff in administrative segregation status.  Ollar also updated the Individual Custody/Detention Report on Plaintiff White by deleting the remark "extremely dangerous", and adding that he had escaped over a prison wall and was involved in an assault on another inmate with AIDS in April, 2011. (Doc. Nos. 146-9, p. 4, 146-17.)  Furthermore, during Plaintiff's confinement at the two Jails, he wrote two letters complaining about his conditions of confinement.  (Doc. Nos. 146-12, 146-13.) The USMS inspected the two Jails and found them in compliance with USMS standards. (Doc. Nos. 146-14, 146-15, 146-16.)  Pursuant to the contracts with the Jails, the USMS does not supervise the day-to-day operations, and the local Jails are

responsible for the care, custody, and safekeeping of the federal prisoners housed at the respective facilities.  (Doc. Nos. 146-9, p. 2, 146-10, 146-11.)

Ollar states Plaintiff cannot support his claim that she retaliated against him for the filing of this lawsuit, by notifying the PCDF that he was an escape risk.  Ollar states she does not specifically recall notifying the Jail that he was an escape risk on May 5, 2011, and did not become aware that Plaintiff filed suit against her until she was served with summons and a copy of the complaint on June 26, 2011. (Doc. No. 146-9, p. 4.)  Therefore, Plaintiff cannot show that but for her retaliatory motive, he would not have been transferred from general population to segregated housing.  See Kind v. Frank, 329 F.3d 979, 981 (8th Cir. 2003).  In addition, Ollar states that Plaintiff cannot support an Eighth Amendment deliberate indifference claim against her, based on the alleged unconstitutional Jail conditions, because he cannot show that she actually knew of and was indifferent to a risk of harm to him.  She states that she never personally interacted with Plaintiff, did not transport him, never talked with him, and that the USMS followed up on Plaintiff's complaints and found the Jails to be in accordance with their standards.  (Doc. No.146-9, pp. 1-2, 4.)  Finally, Defendant states she is entitled to qualified immunity on Plaintiff's claims against her.

Plaintiff did not specifically respond to Ollar's Motion, and relies instead on the assertions contained in his Summary Judgment Motion (Doc. No. 151).

The Court agrees that Plaintiff cannot support a constitutional claim for relief against Defendant Ollar, and that her Motion should be granted.  In order to support a retaliation claim, Plaintiff must show that Ollar took an adverse action in response to the inmate's protected activity (in this case, the filing of this lawsuit), and must be able to submit "affirmative evidence" of the retaliatory motive of defendants in order to avoid summary judgment.  See Lewis v. Jacks, 486 F.3d

1025, 1029 (8th Cir. 2007).   In this case, Plaintiff alleges Ollar retaliated against him by notifying

the Jail that he was an extremely dangerous escape risk, which in turn resulted in his placement in

administrative segregation.   However, Plaintiff does not dispute Ollar's statement that her

notification to the Jail was based on information provided to her by her superior in the office, that

Plaintiff needed to be housed in a more secure facility because he was an escape risk.   Although

Plaintiff disputes Ollar's statement that she was not aware of the lawsuit until June, stating that the

lawsuit was common knowledge at the Jail, he does not deny that he was convicted of escape.

Rather, he appears to contest his characterization as "extremely dangerous."   But according to the

affidavit of Shawn Smith, Major of Housing and Security at the PCDF, administrative segregation

is used at the Jail to separate inmates from the general population when their continued presence

would pose a threat to life, self, property or the secure and orderly operation of the facilities, and an

escape risk inmate poses such a threat.   (Doc. No. 142-1.)

The Court also finds no evidence of deliberate indifference on Defendant Ollar's part, so as

to support Plaintiff's Eighth Amendment claims against her.   Since Plaintiff was a pretrial detainee

at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to

determine the constitutionality of his conditions of confinement.   Bell v. Wolfish, 441 U.S. 520, 535

(1976).   In the Eighth Circuit, however, the standards applied to such claims are the same as those

applied to Eighth Amendment claims.   Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir.

1994).   Therefore, in order to support an Eighth Amendment claim for relief, plaintiff must allege

and prove that defendants were deliberately indifferent, that is, that they knew of, and yet

disregarded, an excessive risk of harm to plaintiff's health and safety.   Farmer v. Brennan, 511 U.S.

825, 827 (1994). Plaintiff White provides no such proof that Defendant Ollar was aware of his

conditions of confinement and acted with deliberate indifference to his health and safety.  He also provides no proof that she controlled or dictated his placement in administrative segregation. Therefore, the Court finds as a matter of law that this claim against Defendant Ollar should be dismissed.

Defendant Ollar also moves for summary judgment based on qualified immunity, which protects officials who acted in an objectively reasonable manner, and may shield a government official from liability when her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine if Defendant is entitled to qualified immunity, the Court must consider whether the facts alleged, construed in the light most favorable to the Plaintiff, establish a violation of a constitutional or statutory right, and whether that right was so clearly established that a reasonable official would have known that her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).

Having reviewed the evidence submitted by Defendant in support of her Motion, the Court finds that she acted reasonably under the circumstances, and that no reasonable fact finder could determine that the facts as alleged by Plaintiff established a violation of a constitutional or statutory right.  Therefore, Defendant is also entitled to qualified immunity on Plaintiff's claims against her.

C.    **Defendant Holladay's Motion**

1)    Exhaustion - Holladay presents the affidavit of Nancy Brawley, the Jail grievance officer, who states that Plaintiff failed to exhaust his administrative remedies with respect to his allegations about mold, sewage, second-hand smoke, and the conditions of confinement in the administrative segregation cell. (Doc. No. 142-3 , p. 2.)  The Jail grievance policy allows inmates

to file grievances by completing a grievance form, and if the inmate is not satisfied with the response, he may appeal to the Chief of Detention.  (Id. at p. 1.)  Therefore, pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, these claims should be dismissed for failure to exhaust.

Plaintiff White does not address this issue in his Response.

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.  In Booth v. Churner, 532 U.S. 731, 741 (2001), the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  In addition, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.  Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'"  Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000).  In Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003), the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory."  (Emphasis in original.)  Finally, in Jones v. Bock, 549 U.S. 199, 218 (2007), the Supreme Court held that while the PLRA itself does not require that all

defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

In light of Plaintiff's failure to exhaust his administrative remedies with respect to his allegations of mold, sewage, second-hand smoke, and unconstitutional conditions in the administrative segregation cell, the Court will dismiss these without prejudice, pursuant to the PLRA.

 2) Remaining Conditions

Plaintiff's remaining allegations of unconstitutional conditions of confinement include: housing of a federal pretrial detainee (Plaintiff) with convicted state prisoners; illegal sale of Oklahoma cigarettes in the Jail; injuries caused by the leg irons; and the return of his legal mail.

 a) confinement with state prisoners - Defendant Holladay states in his discovery responses that inmates are housed at the Jail according to their behavior classification, and when feasible, federal detainees are housed separately from state convicted inmates. (Doc. No. 142-2, p. 1.)  In addition, Shawn Smith, the Major of Housing and Security at the Jail, states that administrative segregation is used at the Jail to separate inmates from the general population when their continued presence would pose a threat to life, self, property, or the secure and orderly operation of the facility.  (Doc. No. 142-1, p. 1.)  Holladay states that White cannot show that the Jail policy violates his constitutional rights, because there is no due process right to be housed separately from the sentenced inmates, citing Burciaga v. County of Lenawee, 123 F.Supp.2d 1076, 1078 (E.D.Mich. 2000).  In addition, he notes that Plaintiff does not allege that he was harmed in any way during this housing, and therefore, his claim should fail.  Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999).

The Court agrees that White does not support his Eighth Amendment claim based on his housing with two state-sentenced inmates.  He does not allege Defendant Holladay's involvement in placing him in the cell, and he does not allege how he was harmed.

b)      Selling Oklahoma cigarettes - the Court is unaware how this violates Plaintiff's constitutional rights, especially since it has already determined that Plaintiff's second-hand smoke claim fails for failure to exhaust administrative remedies.  Holladay states Plaintiff is attempting to obtain a monetary award under the "Whistleblower Act" for exposing this fact, but that he lacks standing under either the federal or state acts because they apply to employees of the United States or of Arkansas.  See 5 U.S.C. § 2302, ARK. CODE ANN. § 21-1-601 et seq.  In light of such, the Court finds this claim should be dismissed.

c)      Leg iron injuries - Plaintiff claims he suffered cuts on his ankles due to the mandated use of leg shackles while in administrative segregation.  However, Plaintiff does not allege any facts to show that Defendant Holladay was personally involved in shackling him, aware of a risk of harm to him, or that he deliberately disregarded Plaintiff's health and safety.  Supervisor liability is limited in § 1983 actions, and a supervisor cannot be held liable on a theory of respondeat superior for his or her employee's  allegedly unconstitutional actions.  See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994).  A supervisor incurs liability only when personally involved in the constitutional violation or when the  corrective inaction constitutes deliberate indifference toward the violation.  Choate v. Lockhart, 7 F.3d  1370, 1376 (8th Cir. 1993).  In this case, Plaintiff does not allege any knowledge or personal involvement by Defendant Holladay with respect to most of these conditions allegations.  Therefore, the Court finds as a matter of law that this allegation against him should be dismissed.

d)      Legal Mail - Plaintiff claims that legal mail sent to him at the Jail by his private attorney was not delivered to him, and instead, was returned to his attorney.  Again, however, he does not allege any personal involvement by Defendant Hollaway.  In addition, he does not allege that he was harmed by his failure to receive this mail.  In order to support a claim for denial of access to the courts, Plaintiff must allege and prove that the denial resulted in an actual injury to a pending case.  See Lewis v. Casey, 518 U.S. 343, 349 (1996).  Therefore, the Court finds as a matter of law that this allegation against Defendant Holladay should be dismissed.

**D.      Defendant Byrd's Motion**

Defendant Byrd first states that Plaintiff's allegations against him should be dismissed because he has not alleged any personal knowledge or involvement by him.  As stated above, respondeat superior liability is not an acceptable theory of liability in § 1983 actions.  In addition, Byrd states that Plaintiff cannot show that his conditions of confinement constituted cruel and unusual punishment, or deprived him of a "single identifiable human need," citing Whitnack v. Douglas County, 16 F.3d at 957, quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991).  Plaintiff was incarcerated at the FCDF (Jail) from April 15, 2011, until May 3, 2011, and claims that during that time he was denied a mattress and bedding for over sixteen hours each day.  Byrd states that White has no constitutional right to bedding, citing Williams v. Delo, where an inmate was confined to a strip cell for four days with no mattress.  49 F.3d 442, 446 (8th Cir. 1995).  In addition, Plaintiff does not allege that Byrd was involved in these decisions or aware of any of his complaints.

Plaintiff also claims he was denied basic hygiene materials, such as soap, razor, deodorant, and towels.  Defendant Byrd states that all detainees are provided with toothpaste, soap and cleaning materials daily, and that he had no personal contact or conversations with White and did not place

him in segregation (Doc. No. 150-1, p. 1-2.)  Byrd also notes that the deprivation of deodorant was found not to violate an inmate's Eighth Amendment right in <u>Scher v. Purkett</u>, 758 F.Supp. 1316-17 (E.D.Mo. 1991).

Byrd adds that White's allegation of denial of access to a telephone does not support a constitutional claim, citing <u>Benzel and Grammar</u>, 869 F.2d 1105, 1008 (8th Cir. 1989), and that Plaintiff fails to support his denial of access to the courts claim because he does not allege or prove that he suffered any harm.  <u>Klinger v. Department of Corrections</u>, 107 F.3d 609, 617 (8th Cir. 1997). In addition, Plaintiff's vague allegation that Defendant denied him "religion" and "religious freedom" (Doc. No. 8, p. 2), by refusing to allow him to wear his wedding band, does not support a First Amendment freedom of religion allegation, because he does not allege that such infringed on a sincerely held religious belief.  <u>Murphy v. Missouri Dep't of Correction</u>, 372 F.3d 979, 983 (8th Cir. 2004).[2]

Although "[t]he Constitution does not mandate comfortable prisons," humane conditions of confinement include "adequate food, clothing, shelter, and medical care."  <u>Farmer v. Brennan</u>, 511 U.S. at 832.  In order to support an Eighth Amendment violation, Plaintiff must prove the existence of objectively harsh conditions of confinement, together with a subjectively culpable state of mind by prison officials in condoning or creating the conditions.  <u>Choate v. Lockhart</u>, 7 F.3d 1370, 1373 (8th Cir. 1993).   The "defendant's conduct must objectively rise to the level of a constitutional violation, ...,  by depriving the plaintiff of the 'minimal civilized measure of life's

---

[2]This allegation is not included in Plaintiff's superseding amended complaint (Doc. No. 15).  The Court notes that "[a]n amended complaint 'ordinarily supersedes the original and renders it of no legal effect.'"  <u>In Home Health, Inc. v. Prudential Ins. Co. Of America</u>, 101 F.3d 600, 603 (8th Cir. 1996), quoting <u>International Controls Corp. V. Vesco</u>, 556 F.2d 665, 668 (2d Cir. 1994) (other citations omitted).

necessities.'... The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." <u>Revels v. Vincenz</u>, 382 F.3d 870, 875 (8th Cir. 2004), quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 342 (1981) and <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1977).   "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety...." <u>Wilson v. Seiter</u>, 501 U.S. at 298-9, quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986). Furthermore, "discomfort compelled by conditions of confinement, without more, does not violate the amendment." <u>Smith v. Coughlin</u>, 748 F.2d 783, 787 (2d Cir. 1984), quoting <u>Jackson v. Meachum</u>, 699 F.2d 578, 581 (1st Cir. 1983).

Initially, the Court notes that Plaintiff fails to support his allegations against Defendant Byrd by alleging any type of knowledge or personal involvement.  In addition, he does not allege any deliberate indifference by Byrd with respect to the conditions.  Finally, the Court finds that Defendant Byrd is entitled to qualified immunity, because he cannot show that Byrd knew of any risk or violated clearly established law.

## III.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1)    Defendant Byrd's Motion to Dismiss (Doc. No. 116) be DENIED.

2)    Plaintiff's Motion for Summary Judgment (Doc. No. 126) be DENIED.

3)    Defendant Holladay's Motion for Summary Judgment (Doc. No. 141) be GRANTED.

4)    Defendant Ollar's Motion for Summary Judgment (Doc. No. 144) be GRANTED.

5)    Defendant Byrd's Motion for Summary Judgment (Doc. No. 148) be GRANTED.

6)      Plaintiff's allegations against Defendant Holladay of mold, sewage, second-hand

smoke, and administrative segregation conditions be DISMISSED without prejudice.

7)      All other allegations against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 19th day of October, 2012.

_____

   JEROME T. KEARNEY
   UNITED STATES MAGISTRATE JUDGE